Good afternoon everyone, welcome to the Illinois Appellate Court for its District 6th Division. We'll ask the lawyers who are going to argue to both step up and introduce yourselves and let us know who you are, please, and who you represent. Good afternoon, Elliot Schiff on behalf of the plaintiff. Good afternoon, Christopher Godinari on behalf of the appellate. All right, thank you, gentlemen. Under the Supreme Court rules, each side has 20 minutes for their main argument. If there's an additional 10 minutes for rebuttal, we may change that if we have a lot of questions or if things become repetitive. So govern yourselves accordingly. Please understand we have very thoroughly read the briefs, we are familiar with the issues in the case, so please get to your best issues first. And with that, Mr. Schiff, you may proceed. Thank you. So we're up here in the shorthand version of what happened that brought us here was that this was the single refiling rule on a foreclosure and a promissory note and guarantor. The cases that were brought were dismissed because there is a single refiling rule under 13-17. The defense to that was very simply that, well, we filed a counterclaim, and so 13-207 allows us to bring such an action. And the court said, no, 13-207 is not a statute of limitations defense, so the single refiling rule that if you voluntarily dismiss it, you can't refile it. So that's the very, very abbreviated shorthand version of how we got here. Mr. Schiff, before we get into the meat of the issues in the briefs here, let me help part the myths for me a little bit. Because for those of us, I did foreclosure cases for five years, and I'm a little confused about one thing here. Because it was always my position that foreclosures, because it was a 20-year loan or a 10-year loan, that if the loan became delinquent and then there was this lawsuit, then you could work things out and then it would be dismissed. But then 10 years down the road or two years down the road or one year, you could refile if it became delinquent again. Was this a short-term loan? What was the reason that you really didn't get a third chance to refile? Was it because you were trying to go into scene delinquency? Or what happened behind the scenes? Actually, that was the argument that was one of the arguments that was made by Churek and Texan that this stands on its head all the previous rulings that allow for a five-year or a 10-year note that you could still bring such an action. So as we sit here today, there's still a delinquent note? There's still a delinquent note. Which is still within its original term? Yes. And you can't ever collect on that because now you've been barred? That's right. All right, I understand. So both decisions were decided within two days of each other, the one here in Illinois in the Circuit Court and then the one that was up in the United States District Court. And the argument that was being made in both the legal malpractice case was that, hey, you knew that two different courtrooms, two different Mr. Schiff, did the lawyers from Churek and Texan represent you in both cases? Correct. Just a clarity, though. Initially, Hammond was represented by somebody else, but Churek and Texan. What about in both appeals? They handled both. Okay. Correct. And so basically what we appear here before you on is Churek and Texan's principal position seems to be, hey, two different judges reached the same conclusion. You're on notice. As a matter of law, once that happens, we're going to have a new law that says two decisions means you must investigate the matter. It's a matter of law. It's not a question of fact. But the fact that two courts separately came to the same conclusion, did that trigger something in, you know, the trial judge made a comment about the defendant being a sophisticated banker. The fact that two separate courts in two different jurisdictions reached the same conclusion, did that ring a bell for you? Well, I think that's a – if I'm arguing this case before a jury, I can make a pretty – But now you're just arguing it before me. No. So answer my question. Yes. What I'm saying is it's not – it shouldn't be a matter of law that that makes it so. We come up on occasion where there's a situation where there's already a decision exactly like the present one that you're appearing before, and you lose this case. And the client is advised that, well, there was a previous decision that was entered that's very similar to ours, but the court denied relief, and now our case is denied relief. But this court is wrong because that earlier case doesn't control. So what I'm saying here is that's not a question of law. This is de novo review. This is up on the pleadings. But that wasn't my question, sir. I asked whether or not that rang a bell for your client because that seems a little unusual that both courts came to the same conclusion in two different jurisdictions. They didn't communicate with each other, but they came to the same conclusion. I just wondered whether or not that would be something that would ring a bell to put you on notice, as your opponents seem to say. Well, two answers. Put me as a lawyer on notice what I would have done with my experience? Yes. How's that? Okay. I'm not trying to say otherwise as a lawyer because I do this work. If you're asking me what would I have done, I would do what every other lawyer has ever done in my profession for the last 45 years, which is what I see happening every single time. I get a call at least once a month or sometimes more than once a month, and it's either one of two things. I get a call from somebody that said, my lawyer tells me that I should seek your advice as to whether or not I have a remedy. I've gotten that call because the lawyer writes the letter that says you might want to consider whether you have any remedies. And that had happened in the DeLuna case where my friend Mike Razzak wrote a letter and said, you ought to consider that there might have been a mistake here. He didn't go out and say that there was a legal malpractice case, but he went and told the client that which he was required to disclose. And here what do we have? We have the absolute assurances of Chiric and Texan that these courts are just wrong, plain wrong. This will get reversed. They roll them into that. And what did Jackson Jordan say? It makes clear that the continuous reassurances of one lawyer after an adverse result may toll the statute of limitations. How is it that now there's a new law that Chiric and Texan proposes that says, yes, but if there's true decision, that changes the equation as a matter of law. I say it cannot possibly be. Would it be correct to say that basically your entire appeal here before us rests on sort of the Jackson Jordan doctrine that assurances by an attorney may toll the statute of limitations? You don't have another escape hatch other than that? No. Okay. There's none other. It's Butler v. Mayor Braun and Platt, which had a different result, but raised the same exact point, that these are questions of fact. It's the same thing in Derrida, same thing that happens every day. And the other part that always happens is that when some lawyer calls me and says, I think I might have made a mistake.   You said that the trial court would allow you to file an amended complaint, which would have laid out all of the cure, which would have cured the defect that he found in your original complaint. Isn't that right? That's what you're asking. You're arguing. Yeah. And, you know, I find that interesting because in your reply, you referenced the issue of failure of the trial court to allow you leave to amend almost tangentially. You know, shouldn't that be something that you would argue more front and center? Even without the amended complaint, the court had ruled to dismiss it. I think she was wrong from the get-go, okay? Either way, the principle point is, is it is a matter of law that we're a sophisticated client and therefore on notice when two different courts reach the same conclusion, even if there's assurances that these judges have gotten it wrong. And simultaneous with that, Chirik and Texan is reporting that they might have committed malpractice. They put their insurance company on notice. And interestingly enough, they sent to the ABA opinion. But they didn't send what the ABA opinion, the Model 1.4, says, which is what has been going on in our profession, as I said, for 45 years. Every once a month, twice a month, the lawyer will call me up and say, what do I think, what should I do? And I say, well, you should do exactly what Matt Orasek did, advise them. I might just, if I could, just give you one other thought. There was a case in Federal State Bar Mutual v. Greenfield that was 2012, 1-10-337. It's a case that I thought of as I was coming here, but happened also to be involved with Mr. Orasek. And briefly what that was about was the insurance company said to, was filing a deck action and was asking for no coverage because the lawyer who had made a mistake writes a letter and said I made a scrivener's letter and he advises the people. And the Justice Gordon said both parties acknowledged that as an attorney, Greenfield had a duty to disclose his mistake to the beneficiaries. That is not new. That is exactly what Illinois law has said for a long time. That's what the Model Rule 1.4 is. So here they are with a fiduciary relationship where they're telling their clients something that is inconsistent with what they concern themselves with. And then they're saying, well, but you should have known because you're a sophisticated user. Going back to what you said, Justice Cunningham, well, what would you do? Well, what do you mean you're a sophisticated user? We're a consumer of legal services. Where is that in the record that we're somehow sophisticated? Even if that were the case, even if you accept that we're a sophisticated user, what does that do? Does that mean as a matter of law that you now are required because you're not a widow that's 95 years old and doesn't read the law? We're a bank. We're not familiar with the Code of Civil Procedure in Illinois about the one refinery rule. So can they do that? Mr. Schiff, did you raise the statute of repose as a saving statute to rescuing your complaint? I'm sorry. One more time on that one. What about the statute of repose? Did you raise that at all with the trial court in an effort to rescue this complaint when the trial court indicated that it was going to be dismissed? No, because the statute of repose didn't come into play. That's a six-year thing, and it says whether you know or you don't know. We were within the time. So we never had to deal with the statute of repose. It never became an issue in this case. It had nothing to do with that, unless I'm misunderstanding your point. The statute of repose would be important if for some reason we were behind the six-year period when we brought the lawsuit. But, no, we weren't. We filed this within four months of the last appellate court of decision and within about, I think it was 18 months of the other court of appeals decision. So that's the time frame. If you were to chronologically relay that out. Now, if I'm reading my notes correctly here, the complaint that was dismissed, did that version of the complaint, that iteration of the complaint, contain allegations about being lulled into submission, so to speak, by the attorneys? Yes, yes, it did. But then you beefed them up into the amended complaint. Yes, it shows up in the amended complaint as well. All right. And in the briefing that we have before us, I'm not sure that you actually raised the issue of the efficacy of denying leave to amend the complaint until you hit your yellow reply brief. In all fairness to the court, there was not well fed thought forth that they should have given me leave to amend the complaint. I mean, we argued it from day one, and we argued it in our original brief, and we argued it in the reply. Your position is that the complaint that was in fact dismissed on the merits, so to speak, does contain enough allegations regarding being lulled into a mistaken belief by the attorneys to survive under Jackson Jordan. Yes, Your Honor. And the other thing is that Waver is not on the court, and I think both of us want that decision decided of what is the law here in Illinois? Do you have a responsibility? Is Jackson Jordan the law in Illinois? Do we allow this to stand? That's really the question. And that's where we disagreed, that you can't do that. You cannot lull somebody into believing something, there's no problem, and it will get reversed. Well, that was my question earlier, and Justice DeLorte asked it in a more artful way than me. And my question was, you know, this question of the you basically reference the failure to the trial court's failure to allow you to amend the complaint almost in a tangential way in your reply brief. It's the most important issue in the case. I mean, it would have been nice to flesh that argument out a little more rather than having us have to read between the lines, which is essentially what you forced us to do by not fleshing out the argument. Well taken. Nobody here is going to disagree with you, Justice Kennedy, about whether it could have been more artfully raised in this. I don't have any disagreement with you on that. Okay. It's not a waiver on the court. And I thought that it was pretty clear that we both were arguing from the same facts standpoint. So essentially the underlying question is, is this court going to allow a cause of action to get dismissed on the basis of whether or not we were lulled into complacency by the comments of the law firm that was representing them when they were acting inconsistent with what Rule 1.4 and the modern rules provide that it requires a lawyer to inform a client if he believes that he may have materially damaged that client's cause of action. Isn't that what he's required to do? And that's where we as lawyers have a responsibility. And the very first, the preamble to the rules of professional conduct, say this is a public trust and you must advise your clients. You don't have to necessarily do what Greenfield did in that Illinois State Mutual Insurance Company case  And then he invokes the insurance company, comes in and says, hey, you've admitted liability, we're going to deny coverage. And, of course, just goes and says, no, that's not going to be the case. And he took it on that basis, as you'll see from that decision, said we're not going to allow that to happen here. So that's really what we're asking here. Any other questions? Thank you, Mr. Schiff. Mr. Gallinara, you may proceed when you're ready. Thank you, Your Honor. May it please the Court. Getting straight to the heart of the matter, in Appellant's initial brief, he concedes a point that he tries to argue here. It was always understood in the initial brief and in our response brief that there's an adverse judgment rule that a cause of action of illegal malpractice will accrue upon the entry of an adverse judgment. Now, there may be an exception to that rule where the material facts regarding the stated basis for that adverse judgment are withheld or concealed from the client, but that is not alleged here. What is alleged here is that we stated the opinion that the courts that entered those adverse judgments against the bank were wrong. The bank uses those factual allegations to make an equitable estoppel argument against the application of the statute of limitations. It does not use those factual allegations for any other reason. And as Justice DeWart correctly points out in the brief that Appellant filed, it relies upon Jackson Jordan. So, but I think it's important to recognize that in Jackson Jordan, there was what the Supreme Court recognized as the first adverse judgment entered against the client within the time period for filing the legal malpractice action under the applicable statute of limitations. Yes, Your Honor. I'm going to ask you the opposite of what I asked your opponent. Is the fact that the client is, as the trial judge puts it, a sophisticated banker, is that the defining reason why they should have known that they had a reason to expect or to suspect that malpractice had been committed? Are they held to a higher standard than an ordinary person? No, I don't believe so, Your Honor. I think that that is an important fact, but certainly not a dispositive one. And I think that the discovery rule doesn't draw distinctions between the two. Why is it relevant? I mean, the trial judge highlighted that, so I have to think that she thought it was somewhat important. Why is it relevant at all? I don't know that it is, Justice Cunningham. I don't know that it is, because I don't think that the discovery rule in other cases, it talks about what a reasonable person would do. Well, you answered. Did your client at any time suggest that your underlying client, did they at any time suggest that the bank get a second opinion about your advice that the appellate court was going to reverse the trial court? Did you suggest to them that, you know, we think that this is going to be reversed, that maybe you ought to. It is alleged that we did not, and that's part of the basis of the record that is before us now. I'm in no position to dispute that, certainly for purposes of this appeal. I don't think that matters. I don't think that that's what the lawyer must do. If we take all of the allegations in that complaint as true, as we must, does that suggest to you that your clients actually lulled the bank into believing the bank comes, as you just admitted, they come to your clients as any other person, any other non-lawyer, seeking legal advice. And if they get legal advice, are they on notice that somehow they should go get a second opinion because the legal advice may not be right? At what point does the lulling take place? I think it takes place at the time of the judicial decisions and the bank's knowledge of the stated basis for the judicial decisions because the bank knows that Mr. Gilmartin and Mr. Fleischer have one view of the law, and the bank knows that Judge Valderrama and Judge Adelman have a different view of the law. And for purposes of equitable estoppel, the appellate court has moved beyond Jackson-Jordan, and in Brummel v. Grossman, which we cite to in our brief, the court holds out that in order to establish an equitable estoppel beyond the date of the entry of an adverse judgment against the client, you need more than just, gee, I think we're going to win going down the road, don't worry about it. I can say a little bit. Mr. Del Nari, they were pretty forceful in their allegations in terms of what your clients allegedly said to lull the bank into not pursuing this further. It was a forceful opinion, but there was no misrepresentation or concealment of a material fact regarding the stated basis for the court's decision. No misrepresentation or concealment of a material fact regarding whether Judge Valderrama Did your client at any time advise them that they thought they may have committed malpractice? They notified their insurance carriers. There must have been a reason for that. Did they advise the bank that they thought maybe they had given them not-so-perfect advice? Again, as the record shows, there's no advice given by Chuack and Texan to seek a second opinion or stating we may have committed malpractice. They allege that, and for purposes of why we are here, I cannot dispute that. If all of those things are true, does that constitute equitable estoppel? No, because in Velma v. Grossman, the court is quite clear where you already have the entry of an adverse judgment against the client, and the client is on notice of that, and the client knows that these two judges dismissed valuable claims that the bank had because of something that Chuack and Texan had done back in 2012. And there's no misrepresentation or concealment of a material fact that would give rise to a legal malpractice cause of action. There is no equitable estoppel. There needs to be that misrepresentation or concealment of fact. What Jackson Jordan was talking about is you can't go back earlier in time before the adverse judgment. Is the fact that their client notified their insurance carrier a fact that should have been revealed to the bank? Is that a fact that should have been revealed? No, because the standard for reporting to your insurer as an insured is one thing. What the attorney and the client have between themselves as a relationship is another. And the very case that Mr. Schiff cited to in his argument, that ISBA mutual case, what Justice Gordon really ruled there is what the insurer must do with respect to its insurer for purposes of the rights and responsibilities under that insurance contract is separate and apart from what the attorney-client relationship requires. And the important part of the ABA ethics opinion that was referenced in our brief, if you look at the two state ethics opinions, North Carolina and Colorado, that are referenced within the body of that ABA opinion, they're also in agreement that what needs to be disclosed to the client in order to meet the attorney's ethical obligation is the material fact that would give rise to the claim for legal malpractice. And because Justice Adelman and Judge Valderrama stated, we're dismissing your claim because of what Chuhak did back in 2012, and because we told them that, and we said, we believe it's wrong, we believe that the counterclaim rule doesn't, the fact that we have a counterclaim in the circuit court of Cook County means that the one refiling rule should be overcome, because really what Chuhak did was dismiss that second action so that all of the claims could be heard in one location because the borrowers and the guarantors had separately filed the debt action in the chancellery court. So what Chuhak did was withdraw its claim, file it as a counterclaim so that all of the claims could be heard together. Now, in hindsight, what Justice, what Judge Adelman and Judge Valderrama and the 7th Circuit indicate is that when you are doing that, there are things that you need to do in order to make sure that you can avoid the res judicata bar. But I think that there are so many exceptions to the res judicata bar that maybe those should have been applied here. There's no argument in Wisconsin, in Illinois, by Mr. Schiff, that the arguments that Chuhak and Texan made on appeal to the 7th Circuit were unsound or in bad faith in any way. They were really strong arguments, and maybe those arguments should have prevailed, but we don't even need to look at that here. What we have here is the fact that there were no facts concealed or misrepresented to the bank regarding the standard basis for the court's decision. It seems like what Chuhak should have done, or rather the bank should have done, was rather than voluntarily dismiss the second case so that it could be replayed as a counterclaim in the deck action, would simply be to ask the court to assign them to the same judge's related cases. Well, it's two different court systems. I don't know that you could do that. It's the Northern District of Illinois. If it had been in the Circuit Court of Cook County, that would have been an easy way to proceed. Maybe you seek the specific statement by the Northern District of Illinois judge. It isn't just a voluntary dismissal without prejudice, but without prejudice to these claims being refiled as counterclaims in this specific action that's already pending, or going to the chancery action and seeking the agreement by the court there or of the parties there to permit this procedural device to be employed. That apparently is all bundled into the negligence that is alleged that occurred on January 2012. But even if we have an equitable estoppel, we are going to win on appeal. Our appellate arguments are going to prevail. Don't worry on appeal. We've got it on appeal. And then the Second Circuit not only affirms Judge Adelman, but continues to say what Judge Adelman says in that, and your counterclaim in Cook County is infirm. One of the arguments about the validity of the mortgage foreclosure proceeding was that the validity of the mortgage foreclosure proceeding was tied to whether you still had a valid claim on the note. And it's the circuit court action that determined whether or not there was a valid claim on the note. So you can't really look at one without the other, and that's what the Seventh Circuit said. That's what Judge Adelman said. So even if we're giving the bank assurances we're going to win on appeal, they know 18 months before they file suit that our assurances of appellate success are not all that they're cracked up to be, that maybe we believe them, but we're just wrong. You're basically saying that the bank should have rejected their lawyer's advice at that point. They should have known and rejected the lawyer's advice. That's your argument? I'm not saying they should have rejected the bank's advice and not continued with the appeal, but you are on notice. You are on notice in 2013, and you certainly are on notice in 2013 that you may have been harmed because of something that your lawyer did or failed to do. You are certainly on notice in 2015 that you can't rely upon their assurances of appellate success when they've already lost an appeal. But the inherent problem with your position is that you have an attorney-client relationship, which is, of course, a fiduciary relationship very strongly recognized in the law. Yes. And the attorneys are telling the client, you know, there is no problem. Despite these adverse decisions, there is no problem. And now you're using that advice as a shield in this case, aren't you? No, because the Seventh Circuit ruled against us, against our advice, against the foolproof position that we supposedly had on appeal. And I think Judge Shelley was correct in saying that's the wake-up call. To the extent that you claim that you're relying upon assurances of success on appeal, and then you know that you're not prevailing on appeal because the appellate court has ruled against you, you can't rely upon, well, maybe we'll prevail on this other appeal that still remains out there. You can rely upon the advice. You can continue with the appeal. But for purposes of acting against the lawyer for legal malpractice, your time for equitable estoppel is up, and 18 months after that is just too long. It's too long a period to wait after an equitable estoppel ends under the case law that says, when is a timely fraud cause of action. Anything else, counsel? Yes, Your Honors. There is, underlying all of what we're talking about here today, are a series of rules regarding when legal malpractice claims can be brought and when they accrue. There is no rule in Illinois that requires a plaintiff to wait until after an appeal is done before filing a legal malpractice action. There is no rule in Illinois that says a legal malpractice claim does not accrue until after all appeals have been exhausted. There's even a rule that says the legal malpractice cause of action doesn't delay accrual if you file a motion for reconsideration, hermitage versus contractor's adjustment. We cite to that case in our brief. Really what we're talking about here, when we're looking at Jackson Jordan, which is really an additional argument going against anybody's attempt to argue for an earlier accrual date, earlier than the first adverse judgment. That really was what the Supreme Court was concerned about in its discussion of lulling in Jackson Jordan. Anybody's attempt to say, no, your claim accrued before the first adverse judgment entered against you. Here we have the adverse judgment in 2013, and they don't file suit until 2017. That's not the case here. Nobody's saying, well, the cause of action actually accrued earlier than 2013. We're not saying that the way the Supreme Court was concerned. Somebody might say that in Jackson Jordan. So when we look at Jackson Jordan and then we look at Brummel versus Grossman, we know that where you've already got an adverse judgment entered against you, if you want to make an equitable stopper regarding assurances that your attorney makes after that adverse judgment has entered against you, it needs to be based upon a misrepresentation or a concealment of a material fact regarding the cause of action that you would have against your attorney. And we just don't have that here. The argument by appellant here is really an attempt to stand all of the current rules regarding accrual on their head and say there's no accrual of a legal malpractice cause of action until after all appellant avenues have been exhausted. And that's just not the rule in Illinois. Thank you. Thank you. Mr. Schiff, reply. It seems to me that Justice Cunningham put her finger right on the question. What should Hamney have done? Should they have gone out and got a second opinion? Should they have rejected the advice of the lawyers that they had placed their trust in? Justice Floyd, you said, you know, if they told you it's no problem, is that enough? It's more than it's no problem. If you look at paragraphs 19 and 26 of the original complaint, they're saying this is a foolish decision, essentially. It's unsupportable. And so it's not merely it's no problem. This is a serious problem for which they themselves have information and they're saying enough to convey it to their malpractice carrier. They don't quarrel if they did this. They're saying you should have known about this and you didn't act upon it. Are you suggesting that that was a material fact that should have been disclosed? Yes, exactly. That is who we are as lawyers. I can't fathom a situation that we as lawyers are going to say that that is not a responsibility. My own private practice, and for the years that I've done this, unfortunately for 45 years, I've never heard anybody make that argument that you don't have to say something to your It just doesn't work in the real world either. Nobody plays that game. Nobody does that. We all disclose to our clients. I don't know what we're doing here as lawyers. I was the author of the continuing legal education for the last seven years, updating it periodically. And there's a section in there that provides about the notice that you're required to do for your client. You don't have to say I made a mistake. You don't have to do that, although that has happened. You can't make a negotiation with your client and try to settle it. So I think your point, Justice Cunningham, is exactly that. What is it that you would have expected them to do? And that's what the Jackson-Jordan case said. And all of those cases turn on factual determination, but we're here on a motion to dismiss and when asked, you know, did you suggest your question to them? Did you suggest or did your client suggest that there is anything possibly improper here, or that there might be something there? And the answer to your question was, what did he say? No. So this got up here on the 2619. We know what the standard is. It's to know the review. That's not what I believe this Court should hold, that it doesn't matter. Words matter, I guess, is what I would say. Words do matter in our country. That's all I have. Thank you, Counsel, for your arguments. The Court will take the matter under advisement. And concluding the docket for today, the Court will stand in recess.